# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 15, 2012

No. 11-30986

Lyle W. Cayce
Clerk

BEPCO, L.P.,

Plaintiff-Appellee

v.

SANTA FE MINERALS, INCORPORATED, Et Al.,

Defendants

ICAROM, P.L.C.,

Third Party Defendant-Appellant

Appeal from the United States District Court
for the Western District of Louisiana

Before STEWART, BENAVIDES, and GRAVES, Circuit Judges.

CARL E. STEWART, Circuit Judge:

In 2008, BEPCO, L.P. sued Santa Fe Minerals, Inc. in Louisiana state court. In its petition, BEPCO set forth claims for indemnity and contribution in an attempt to recover money it had paid out in a settlement. Santa Fe and a group of subsequently named defendants then filed cross-claims and third-party claims against a multitude of insurers and underwriters, including Lloyd's London.

No. 11-30986

Among the Lloyd's London insurers named by the defendants was the Insurance Corporation of Ireland, which is now known as ICAROM. In January 2011, ICAROM exercised its right to removal under the Foreign Sovereign Immunities Act. After BEPCO objected to removal, the district court remanded the case to state court. ICAROM now appeals the district court's remand order. Because we lack jurisdiction to review this order, we dismiss ICAROM's appeal.

## I.

### A.

Both BEPCO and Santa Fe at some point had interests in a property located in Avoyelles Parish, Louisiana (the "Tebow property"). After they were accused of contaminating the Tebow property, landowners affected by the contamination filed suit (the "Tebow action") in Louisiana state court against, among others, Santa Fe and BEPCO. During the beginning of this action, Santa Fe was the wholly-owned direct subsidiary of GlobalSantaFe Corporation.

In their suit, which was filed in April 2005, the landowners alleged that contaminated water produced from oil wells on the Tebow property was disposed of in unlined earthen pits on their property. According to the landowners, some of the contaminated water entered a drinking water aquifer. As relief for their injuries, the landowners sought $320 million.

On August 16, 2006, Santa Fe, along with 15375 Memorial Corporation, another of GlobalSantaFe's subsidiaries, filed Chapter 11 bankruptcy petitions. The next day, the landowners dismissed Santa Fe from their action. Six days later, BEPCO filed a third-party complaint in the Tebow action seeking relief from GlobalSantaFe. That same day, the bankruptcy court dismissed the third-party complaint without prejudice.

In February 2007, BEPCO proceeded to trial in the Tebow action and settled with the landowners before a judgment was rendered. As part of the settlement, BEPCO agreed to pay the landowners $20 million and assist in

2

No. 11-30986

cleaning the Tebow property in exchange for an assignment of the landowners' property damage claims.

The bankruptcy court subsequently granted BEPCO relief from a previously imposed stay. This relief allowed BEPCO to pursue its action against Santa Fe and Santa Fe's insurers in Louisiana state court.

### B.

On April 29, 2008, BEPCO initiated this action in Louisiana state court by filing a petition against Santa Fe, "Certain Underwriters at Lloyd's, London and London Market Companies," and any other insurance companies that provided relevant insurance coverage. In its petition, BEPCO set forth claims for indemnity and contribution in an attempt to recover the money it paid out in the Tebow settlement.

Approximately two years later, on March 11, 2010, BEPCO filed an amended petition that named additional defendants, including Transocean, a company that had acquired GlobalSantaFe and assumed control of Santa Fe. The amended petition also named specific insurance policies that BEPCO believed provided relevant insurance coverage, including policy number JHB-CJP-441. This petition stated that Lloyd's London was a subscriber to the JHB-CJP-441 policy.

In December 2010, Transocean, along with its acquired subsidiaries, filed cross-claims and third-party claims against a multitude of insurers and underwriters, including Lloyd's London. One of the various Lloyd's London insurers named by Transocean was the Insurance Corporation of Ireland, which is now known as ICAROM. According to Transocean, ICAROM had potential liability under policy number T11669.

### C.

On January 27, 2011, ICAROM removed this case from state court to the Western District of Louisiana. In removing, ICAROM classified itself as a

"foreign state" within the meaning of 28 U.S.C. § 1603(a) and (b), and relied upon the removal rights established by the Foreign Sovereign Immunities Act, 28 U.S.C. § 1441(d).[1]

BEPCO filed a motion to remand on February 18, 2011. In its supporting memorandum, BEPCO provided two grounds for remanding this case back to state court. First, it argued that a service of suit clause in policy number T11669 effectively waived ICAROM's right to removal. Second, it argued that ICAROM was improperly joined for the sole purpose of invoking federal jurisdiction. According to BEPCO, the T11669 policy could not have provided coverage for the injuries alleged in the Tebow action. Thus, it contended that Transocean "joined ICAROM, an entity that clearly [did] not belong in th[e] case, in order to manufacture an opportunity for removal to federal court."

Approximately one month later, ICAROM responded to BEPCO's motion to remand. In doing so, ICAROM revealed that it was a subscriber to the JHB-CJP-441 policy that was explicitly mentioned in BEPCO's March 2010 petition. Based on this information, BEPCO argued in its reply brief that because ICAROM had been a party to the suit since March 2010, its January 2011 removal was untimely.

ICAROM subsequently filed a motion to strike the portions of BEPCO's reply that set forth the untimeliness argument. According to ICAROM, BEPCO's untimeliness argument was itself tardy because it was not raised within 30 days of ICAROM's removal.

BEPCO's motion to remand was subsequently referred to a magistrate judge. On April 25, 2011, the magistrate issued a report and recommendation advising the district court to remand this case to state court. The report provided two reasons for its recommendation. First, the magistrate judge

---

[1] On appeal, the parties do not dispute that ICAROM can be considered a "foreign state."

No. 11-30986

concluded that the service of suit clause in the T11669 policy was a "clear and unequivocal" waiver of ICAROM's removal rights.  Second, he held that because "service was accomplished in precisely the manner set forth in the policy to which ICAROM subscribed," ICAROM's time to remove BEPCO's suit ran out before January 2011.  As a result, he concluded that ICAROM's removal was untimely.  The magistrate judge also concluded that "good cause [did] not exist" to enlarge the time for removal.  In addition, he recommended that ICAROM's motion to strike be denied.

In September 2011, the district court accepted the magistrate judge's recommendation and remanded this case to state court.[2]  It also denied ICAROM's motion to strike.  ICAROM timely appealed the district court's remand order.  Since filing its notice of appeal, ICAROM has also filed a motion "for stay and injunction pending appeal and to expedite appeal."[3]

## II.

On appeal, ICAROM argues that the district court exceeded its statutory authority by ordering a remand on the basis of an objection that was not raised within the 30-day limit prescribed by 28 U.S.C. § 1447(c).  As such, it asks this court to exercise jurisdiction and to reverse the district court's remand order.  In the alternative, ICAROM urges us to consider its pending "motion for expedited consideration . . . as a petition for mandamus and [its] appellate brief as a brief in support of that petition."  We consider each request in turn.

## A.

"Congress has severely circumscribed the power of federal appellate courts to review remand orders."  *Schexnayder v. Entergy La., Inc.*, 394 F.3d 280, 283

---

[2]  Because the district court accepted the reasons contained in the magistrate judge's report and recommendation, we will ascribe those reasons to the district court.

[3]  On October 28, 2011, this court denied ICAROM's request for a stay and injunction pending appeal.  We did, however, grant its request to expedite this appeal.

(5th Cir. 2004).  Indeed, it has mandated that "[a]n order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise[.]"  28 U.S.C. § 1447(d).

"Despite the plain language of the statute and the clear directive it provides to federal appellate courts, the Supreme Court has created a limited class of cases that may be reviewed."  *Schexnayder*, 394 F.3d at 283.  "The premise of this exception is that, for a remand to be unreviewable, the district court must act within the authority granted to it by § 1447(c)."  *Id.* (citing *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 711-12 (1996)).  A district court exercises its authority under Section 1447(c) "if [it] based its remand order on either a lack of subject matter jurisdiction or a defect in removal procedure."  *Id.* (citation omitted).  Any order issued on the grounds authorized by Section 1447(c) is immunized from all forms of appellate review, whether or not that order might be deemed erroneous by an appellate court.  *Kircher v. Putnam Funds Trust*, 547 U.S. 633, 640 (2006).

Here, the district court remanded this suit based on both contractual waiver and timeliness grounds.  The untimeliness of a removal petition is a ground for remand that is authorized under Section 1447(c).  *See Schexnayder*, 394 F.3d at 283.  Because the untimeliness of the removal petition was an independent and authorized reason for remanding this case to state court, the district court's remand order is unreviewable.  We therefore lack jurisdiction to consider ICAROM's appeal.

ICAROM's attempt to establish jurisdiction is unavailing.  In its brief, ICAROM contends that the district court remanded the case on grounds not authorized by Section 1447(c).  According to ICAROM, the district court exceeded its statutory authority when it remanded the case on a ground that was not raised within the 30-day limit established by Section 1447(c).  Because the district court supposedly exceeded its statutory authority, ICAROM

concludes that the district court's remand order falls within the class of orders that are reviewable on appeal.

For this argument to succeed, we would have to accept the proposition that a district court acts outside of its statutory authority when it bases its remand order on a removal defect that is raised by a party outside of Section 1447(c)'s time limit. Although not unreasonable, we refuse to accept this proposition.[4]

Section 1447(c) provides that "[a] motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a)." 28 U.S.C. § 1447(c). On its face, Section 1447(c)'s 30-day requirement governs the timeliness of the filing of a motion to remand, not the time limit for raising removal defects. *See Schexnayder*, 394 F.3d at 284 ("By its own terms, § 1447(c) is limited to *motions*, not *issues*."). Given the unambiguous statutory language, we reject any suggestion that the timing of the presentation of a removal defect–rather than the submission of the remand motion–is what matters for a timeliness analysis under Section 1447(c). We conclude that the statutory language is unambiguous, and therefore must be enforced according to its terms. *Hardt v. Reliance Standard Life Ins. Co.*, 130 S. Ct. 2149, 2156 (2010); *United States v. Fitch*, 137 F.3d 277, 282 (5th Cir. 1998) ("Where the language of a statute is plain and unambiguous, no further inquiry is necessary and this court must construe the words of the statute consistently with their ordinary meaning."). Thus, we hold that for a timeliness analysis under Section 1447(c),

---

[4]    ICAROM relies on the Ninth Circuit's decision in *Northern California District Council of Laborers v. Pittsburg-Des Moines Steel Co.*, 69 F.3d 1034 (9th Cir. 1995) to support its argument that Section 1447(c) prohibits a removal defect from being raised later than 30 days after removal. While *Pittsburg-Des Moines* supports ICAROM's argument, its reasoning is unpersuasive as it does not grapple with the relevant statutory language. Rather than analyzing the statutory text, the Ninth Circuit merely generally referred to the 30-day time limit's purpose and stated that a contrary reading of Section 1447 would "elevate form over substance." *Id.* at 1038. We are unpersuaded by *Pittsburg-Des Moines*'s Section 1447(c) analysis, and thus refuse to follow it.

the central inquiry is whether the remand motion satisfies the 30-day requirement.

This holding is further supported by our decision in *Schexnayder*. In *Schexnayder*, a district court remanded a case on two grounds, one of which was the untimeliness of the removal petition. 394 F.3d at 282-83. Importantly, the timeliness issue was not listed in the plaintiffs' motion for remand, but rather was raised by the district court sua sponte. The appellants in *Schexnayder* argued that the district court exceeded its statutory authority when it remanded the case based on a removal defect that was not presented in the remand motion. *Id.* In rejecting the appellants' argument, this court provided a textual analysis of Section 1447(c) and held that a district court could remand a case based on issues that were not presented in a remand motion. *Id.* at 284. Based on this analysis, we stated that the district court acted within its statutory authority because the remand motion was timely and the basis for remand was a permissible Section 1447(c) ground. *Id.* at 285. As a result, we dismissed the appeal for lack of appellate jurisdiction. *Id.*

We are convinced that *Schexnayder*'s logic and general holding apply in this case. Whether a removal defect is not raised by a plaintiff in the motion to remand, or is raised more than 30 days after removal, does not matter. As *Schexnayder* and Section 1447(c)'s text make clear, what does matter is the timing of the remand motion. In this case, BEPCO's timely motion to remand, combined with the district court's reliance on a permissible Section 1447(c) ground, effectively renders the district court's remand order unreviewable on appeal. For this reason, we dismiss ICAROM's appeal for want of appellate jurisdiction.

No. 11-30986

**B.**

In the alternative, ICAROM argues that the district court's remand order is also subject to review by writ of mandamus. To support this assertion, ICAROM cites to two cases–*Southern Pacific Transportation Co. v. San Antonio, Texas*, 748 F.2d 266, 270 (5th Cir. 1984) and *Hines v. D'Artois*, 531 F.2d 726, 732 (5th Cir. 1976)–that describe our discretionary authority to consider a motion for expedited consideration of an appeal from a district court's stay order as a petition for writ of mandamus. Even assuming the cited case law could also permit us to exercise this discretionary authority in the context of a remand order, we refuse to treat ICAROM's motion for expedited consideration as a petition for writ of mandamus. Put simply, ICAROM has failed to provide reasons for this court to exercise this discretion in its favor.

Moreover, even if we were to consider the motion for expedited consideration as a petition for mandamus, ICAROM would still not be entitled to the relief it seeks. "'As in all petitions for writ of mandamus seeking to reverse a district court's remand, the threshold question that controls us is whether we have jurisdiction to consider this petition.'" *In re Adm'rs of Tulane Educ. Fund*, 954 F.2d 266, 268 (5th Cir. 1992) (quoting *In re Allied-Signal, Inc.*, 919 F.2d 277, 279 (5th Cir. 1990)). Generally, as stated above, "[a]n order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise[.]" 28 U.S.C. § 1447(d). "This proscription includes petitions for mandamus." *In re Adm'rs of Tulane Educ. Fund*, 954 F.2d at 268 (citing *Gravitt v. Sw. Bell Tel. Co.*, 430 U.S. 723 (1977)).

As established above, we lack jurisdiction to review this appeal because the district court's remand order was based on a ground authorized by Section 1447(c). This same line of reasoning denies us jurisdiction to consider ICAROM's putative petition for writ of mandamus. Because the district court's remand order was based on authorized Section 1447(c) grounds, it is also

unreviewable on a petition for writ of mandamus. *See Gravitt*, 430 U.S. at 723 ("The District Court's remand order was plainly within the bounds of [§] 1447(c) and hence was unreviewable by the Court of Appeals, by mandamus or otherwise.").

## III.

BEPCO's timely motion to remand, combined with a remand order based on permissible Section 1447(c) grounds, denies us jurisdiction to review the district court's order on appeal or on petition for writ of mandamus. Accordingly, we DISMISS this appeal for want of appellate jurisdiction.